Alexa J. Laborda Nelson (N.J. Bar No. 027442012)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 (t)
267.402.3131 (f)
alabordanelson@littler.com

Attorneys for Defendants Tesla, Inc.; Tesla Motor, Inc.; Tesla, Inc. d/b/a Tesla Motors, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Adam Williams,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br><br>Tesla, Inc.; Tesla Motor, Inc.; Tesla, Inc. d/b/a Tesla Motors, Inc.; and John Does 1-5 and 6-10,<br><br>　　　　　　Defendants. | Case No. 1:18-cv-04120-JHR-AMD<br><br><br>**Via ECF**<br><br>**Motion Day: May 7, 2018** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY......................................... 1

    A. Williams Signed the Arbitration Agreement as a Condition of Employment ............................................................................................................. 1

    B. Williams Commences Employment with Tesla....................................................... 2

    C. Williams Files a Lawsuit in Violation of his Agreement to Arbitrate .................... 2

III. ARGUMENT: THE COURT SHOULD COMPEL ARBITRATION .............................. 4

    A. The FAA Governs the Parties' Agreement to Arbitrate ......................................... 4

    B. The FAA Requires Arbitration of Williams's Claims ............................................ 5

        1. The Parties' Mutual Agreement to Arbitrate Is Valid ............................... 6

        2. Williams's Claims Fall within the Scope of the Agreement...................... 7

    C. No Grounds Exist for Revoking the Arbitration Agreement ................................. 9

    D. Williams's Claims Should Be Compelled to Arbitration and His Case Dismissed or Stayed.......................................................................................... 10

IV. CONCLUSION................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AT&T Mobility, LLC v. Concepcion,*
   563 U.S. 333 (2011) ............................................................................................................. 4, 9

*Blair v. Scott Specialty Gases,*
   283 F.3d 595 (3d Cir. 2002) ..................................................................................................... 7

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London,*
   584 F.3d 513 (3d Cir. 2009) ..................................................................................................... 6

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003) ................................................................................................................... 5

*Contorno v. Wiline Networks, Inc.,*
   No. 07-5865, 2008 WL 1944825 (D.N.J. May 1, 2008) ..................................................... 9, 10

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) .............................................................................................................. 5, 9

*Edwards v. Hovensa, LLC,*
   497 F.3d 355 (3d Cir. 2007) ..................................................................................................... 5

*First Options of Chi., Inc. v. Kaplan,*
   514 U.S. 938 (1995) .................................................................................................................. 6

*Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.,*
   108 Fed. App'x 35, 38 (3d Cir. 2004) .................................................................................... 11

*Frederick v. Davitt,*
   No. 02-8263, 2003 U.S. Dist. LEXIS 1381 (E.D. Pa. Jan. 31, 2003) ..................................... 10

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,*
   168 N.J. 124 (2001) .................................................................................................................. 8

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20 (1991) ................................................................................................................... 4

*Gonzalez v. Citigroup,*
   500 U.S. 20 (1991) ................................................................................................................. 10

*Great W. Mortgage Corp. v. Peacock,*
   No. 09-017, 2009 U.S. Dist LEXIS 68208, *8 (D. Del. July 30, 2009) ................................... 5

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ......................................................................................................... 4, 5

*Hemberger v. E*Trade Financial Corp.*,
   No. 07-1621, 2007 U.S. Dist. LEXIS 85702 (D.N.J. November 19, 2007) ........................ 9

*Jacob v. Norris, McLaughlin & Marcus*,
   128 N.J. 10, 33 (1992) ...................................................................................................... 10

*John Hancock Mut. Life. Ins. Co. v. Olick*,
   151 F.3d 132 (3d Cir. 1998) ............................................................................................... 5

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
   560 F.3d 156 (3d Cir. 2009) ............................................................................................... 6

*Lloyd v. Hovensa*,
   369 F.3d 263 (3d Cir. 2004) ............................................................................................. 11

*Martindale v. Sandvik, Inc.*,
   173 N.J. 76 (2002) .......................................................................................................... 6, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................................ 4, 7

*Oscar v. Simeonidis*,
   800 A.2d 271 (N.J. Super. Ct. App. Div. 2002) ................................................................. 7

*Pelegrin v. United States Filter Corp.*,
   No. 97-390, 1998 U.S. Dist. LEXIS 5332 (D. Del. Mar. 31, 1998) .................................. 10

*Reichner v. McAfee, Inc.*,
   No. 11-6471, 2012 U.S. Dist. LEXIS 38997 (E.D. Pa. Mar. 21, 2012) .......................... 8, 10

*Rhodia Inc. v. Bayer Cropscience Inc.*,
   No. 04-6424, 2007 WL 3349453 (D.N.J. Nov. 7, 2007) .................................................. 11

*Shebar v. Sanyo Bus. Sys. Corp.*,
   111 N.J. 276 (1988) ............................................................................................................ 6

*Smith v. Radwell Int'l, Inc.*,
   No. 06-cv-05682, 2007 U.S. Dist. LEXIS 45123 (D.N.J. June 20, 2007) ......................... 10

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ................................................................................................................ 4

*Spinetti v. Service Corp. Int'l*,
   324 F.3d 212 (3d Cir. 2003) ............................................................................................... 5

*Sues v. John Nuveen & Co.*,
    146 F.3d 175 (3d Cir. 1998) ................................................................................................10

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ..................................................................................................... 5, 8

*Wolf v. Nissan Motor Accept. Corp.*,
    No. 10- 3338, 2011 U.S. Dist. LEXIS 66649 (D.N.J. June 22, 2011) .......................................6

*Wright v. Rent-A-Center East, Inc.*,
    No. 08-956, 2009 U.S. Dist. LEXIS 110882 (D. Del. Nov. 30, 2009) ....................................10

**Statutes**

9 U.S.C. § 2 ..........................................................................................................................4, 9

9 U.S.C. § 3 .............................................................................................................................11

9 U.S.C. §§ 3-4 .........................................................................................................................5

I.      **INTRODUCTION**

Plaintiff Adam Williams ("Williams" or "Plaintiff") signed an arbitration agreement with Defendant Tesla, Inc.[1] ("Tesla" or "Defendant") requiring him to submit any and all disputes arising out of his employment to binding arbitration.  On January 26, 2018, however, Williams filed this action alleging a cause of action for violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1 – 34:19-8 ("CEPA"), which arises from his employment with Tesla (e.g., Williams disputes he was terminated for failing to meet performance standards).

As demonstrated below, Williams must arbitrate his claim.  The arbitration agreement signed by Williams is valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and New Jersey law.  Accordingly, this Court should compel Williams to pursue his claims through arbitration and dismiss this action.

II.     **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

   A.    **Williams Signed the Arbitration Agreement as a Condition of Employment.**

On September 3, 2012, Tesla sent Williams a four-page employment offer letter that explicitly includes the binding Arbitration Agreement as a condition of employment and includes the Arbitration Agreement as Exhibit A to the offer letter.  *See* Declaration of Brandon Ward, attached hereto as Exhibit 1.  The offer letter states:

> To ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by binding arbitration per Attachment A, and that *you are waiving your right to a jury trial*.

---

[1] The only proper defendant in this matter is Tesla, Inc. Tesla Motor, Inc. underwent a corporate name change and is now Tesla, Inc. References to Tesla throughout this Memorandum of Law include Defendants Tesla, Inc.; Tesla Motor, Inc.; and Tesla Inc. d/b/a Tesla Motor, Inc.

1

*See* Exhibit 1 at ¶ 5; Exhibit A (emphasis in original).  The Arbitration Agreement further provides:

> To ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by binding arbitration in San Francisco California[2] conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes. Accordingly, you and Tesla agree to an arbitration in which:
>
> a.   you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration; and
>
> b.   all disputes between you and the Company shall be fully and finally resolved by binding arbitration that provides for adequate discovery; and
>
> c.   all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion and
>
> d.   Tesla shall pay all arbitration fees in excess of those which would be required if the dispute was filed in a court of law.

*See* Exhibit 1 at ¶ 5; Exhibit A.  Williams physically signed the Arbitration Agreement on September 3, 2012.

      **B.**    **Williams Commences Employment with Tesla.**

Williams began working for Tesla after signing his offer letter and Arbitration Agreement.  Exhibit 1 at ¶ 6.  He was terminated for failing to meet performance standards.  Exhibit 1 at ¶ 7.

      **C.**    **Williams Files a Lawsuit in Violation of his Agreement to Arbitrate.**

Despite Williams's agreement to arbitrate all disputes arising out of his employment with

---

[2] By letter to Plaintiff's counsel dated March 14, 2018, Tesla stated its willingness to arbitrate this matter in New Jersey. *See* Exhibit 3 at ¶ 4. The undersigned counsel did not receive a response from Plaintiff's counsel. *Id.* at ¶ 5.

2

Tesla, Williams filed this action in the Superior Court of New Jersey in the Burlington County Vicinage on January 26, 2018.  *See* Plaintiff's Complaint, attached hereto as Exhibit 2.

On February 21, 2018, Tesla was served with a copy of the Complaint, and on February 27, 2018, Tesla's counsel sent a letter to Williams's counsel, with a copy of the Arbitration Agreement, and requested that Williams agree to arbitrate his claims.  Declaration of Alexa J. Laborda Nelson, Esq., attached hereto as Exhibit 3, at ¶ 2; Exhibit A.  By letter dated March 5, 2018, Plaintiff's counsel indicated that Williams will not agree to arbitrate his claims because of a "jurisdictionally prohibited venue in California" and because "the language in the agreement is not specific enough as to the claims Mr. Williams is waiving, specifically his claims under the law against discrimination[3] and CEPA, which is required for Mr. Williams to make a knowing and voluntary waiver of his rights."  *See* Exhibit 3 at ¶ 3; Exhibit B (internal case citations omitted).  Counsel for Mr. Williams did not allege any other concerns about the Arbitration Agreement nor dispute the existence of the agreement, including that Plaintiff had signed the agreement.  *Id.*

On March 14, 2018, counsel for Tesla sent correspondence to Plaintiff's counsel clarifying Tesla's agreement to arbitrate in New Jersey and asking again whether Plaintiff would agree to arbitration as required by the Arbitration Agreement.  *See* Exhibit 3 at ¶ 4; Exhibit C.  Counsel for Tesla did not receive a response.  *See* Exhibit 3 at ¶ 5.

On March 23, 2018, Tesla removed the matter to this Court based on diversity jurisdiction. (ECF 1).  Tesla now moves to compel arbitration and requests that the Court dismiss this action without prejudice or stay the action pending completion of private arbitration.

---

[3] Williams's Complaint does not contain a claim under the LAD.

3

### III. ARGUMENT: THE COURT SHOULD COMPEL ARBITRATION

#### A. The FAA Governs the Parties' Agreement to Arbitrate.

The Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA"), under which a written provision "in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the FAA declares a liberal policy favoring the enforcement of arbitration agreements. The FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. The FAA permits private parties to "trade[] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991), and is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy favoring arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). This policy is so significant that "even claims arising under a statute designed to further important policies may be arbitrated." *Green Tree Fin. Corp.*, 531 U.S. at 90. "By its terms the [FAA] leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitrate on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3-4. Further, the Third Circuit has repeatedly held that the FAA applies to employment contracts, such as the arbitration agreement at issue in this action. *See, e.g.*, *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 226-27 (3d Cir. 1997), *cert. denied*, 522 U.S. 915 (1997); *Edwards v. Hovensa, LLC*, 497 F.3d 355, 362-63 (3d Cir. 2007); *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 218 (3d Cir. 2003).

Plaintiff's Arbitration Agreement is governed by the FAA because the Arbitration Agreement affects commerce. The FAA's term "involving commerce" is interpreted broadly. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction had no substantial effect on commerce). Applying that broad concept of "involving commerce" here, Williams's employment involved such commerce. Exhibit 1 at ¶ 2.

### B. The FAA Requires Arbitration of Williams's Claims.

Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *see also Green Tree Financial Corp.*, 531 U.S. at 91-92 (holding "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). The Third Circuit has confirmed that "district courts need only engage in a limited review to ensure that the dispute is arbitrable." *John Hancock Mut. Life. Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). Accordingly, the Court must grant this motion to compel arbitration provided because (1) Williams's agreement to arbitrate is valid, and (2) his

claims fall within the scope of that agreement. *See, e.g.*, *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *Wolf v. Nissan Motor Accept. Corp.*, No. 10-3338, 2011 U.S. Dist. LEXIS 66649 *7 (D.N.J. June 22, 2011) (Hillman, J.).

1. **The Parties' Mutual Agreement to Arbitrate Is Valid.**

Because general contract-law principles apply to the interpretation and enforcement of arbitration agreements, courts look to the relevant state law of contracts when determining whether the parties entered a valid and enforceable agreement to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Wolf*, 2011 U.S. Dist. LEXIS 66649, at *7-8. Under the law of New Jersey, the jurisdiction where the contract was formed and Plaintiff worked, a valid contract requires (1) a promise, and (2) consideration. *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87 (2002). Consideration is defined as "a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation," and typically, the creation of an employment arrangement or the continuation of employment is sufficient consideration. *Martindale,* 173 N.J. at 88-89 (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276, 289 (1988)). All elements of an enforceable contract exist here.

a. **There Was A Promise To Be Bound By The Arbitration Agreement.**

Williams indicated his unequivocal intent to be bound by the Arbitration Agreement when he signed it. *See* Exhibit 1 at ¶ 5. For that reason, and because the Arbitration Agreement is clear, unambiguous, and unmistakable (the Arbitration Agreement expressly states that covered claims and disputes "will be resolved" by binding arbitration), Williams voluntarily accepted the Arbitration Agreement to which he is bound. *Martindale*, 173 N.J. at 88-89

(finding plaintiff intended to be bound by an arbitration agreement signed at the beginning of employment because she signed it).

### b. Consideration Supports the Agreement.

The Arbitration Agreement binds both Tesla and Williams, stating "you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by binding arbitration." *See* Exhibit 1 at ¶ 5; Exhibit A. Tesla maintains and enforces arbitration agreements with its employees. Exhibit 1 at ¶ 4). A mutual promise is sufficient consideration under New Jersey law. *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. Super. Ct. App. Div. 2002). Accordingly, Tesla and Williams intended to be mutually bound by the Agreement. *See also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.")

Further, under New Jersey law, a defendant's willingness to consider employment of a plaintiff is sufficient consideration to form a contract. *See Martindale*, 173 N.J. at 88-89, (stating that "defendant's consideration of plaintiff's application, its extension of an offer and the commencement of employment, and thereafter the provision of compensation and on-going employment constituted sufficient consideration to support the parties' agreement to arbitrate their disputes. That agreement is binding."). Consideration therefore exists for the Arbitration Agreement.

### 2. Williams's Claims Fall within the Scope of the Agreement.

The FAA requires courts to apply a presumption in favor of arbitrability. *See Moses H. Cone*, 460 U.S. at 24-25. Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

7

dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am.*, 363 U.S. at 582-83. This case presents no close call. Where, as here, a plaintiff specifically agrees to arbitrate "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment," claims regarding an employee's termination allegedly in violation of CEPA clearly fall within the scope of the agreement to arbitrate. *See, e.g., Reichner v. McAfee, Inc.*, No. 11-6471, 2012 U.S. Dist. LEXIS 38997, at *1, 8 (E.D. Pa. Mar. 21, 2012) (concluding that terms of agreement were clear as to which claims were covered by the arbitration agreement, when the agreement stated that it applied to "any dispute or claim relating to or arising out of our employment relationship, this agreement, or the termination of our employment relationship (including, but not limited to, any claims of wrongful termination or age, sex, disability, race or other discrimination"). The Arbitration Agreement does not need to list every statute it covers,

> The Court will not assume that employees intend to waive those [LAD] rights unless their agreements so provide in unambiguous terms. That said, *we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver (e.g., workplace discrimination claims).*

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 135 (2001) (emphasis added).

Considering the presumption in favor of arbitrability, the unambiguous terms of the Agreement, and Williams's allegations, Williams's claims are clearly subject to arbitration. In the Complaint, Williams alleges he was employed by Tesla and was performing his job duties "up to the legitimate expectations of his employer" when he was retaliated against for

8

complaining about practices he claims he reasonably believed were illegal and/ or fraudulent. (ECF 1 at ¶¶ 4-8). Williams further alleges he was demoted twice and then terminated from his employment. (ECF 1 at ¶¶ 19-21). These claims fall squarely within the Arbitration Agreement.

Moreover, plaintiff's explicit waiver of his right to a jury trial – under the clear terms of the Agreement – leaves no room for misunderstanding the scope of the arbitration agreement: "you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration." Exhibit 1 at ¶ 5; Exhibit A. Based on this straightforward, unambiguous language, Williams must pursue his claims solely through arbitration in accordance with the clear terms of the above-referenced provisions.

### C. No Grounds Exist for Revoking the Arbitration Agreement.

Once a court determines an agreement to arbitrate a dispute exists, it must compel arbitration unless it determines that grounds exist for revocation of the arbitration agreement. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Although Section 2 of the FAA allows a court to refuse to enforce an arbitration agreement "upon such grounds as exist at law or equity for the revocation of any contract," this savings clause does not "preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC*, 563 U.S. at 343. Hence, arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 343 (internal quotation marks omitted).

"Inequality of bargaining power" is not sufficient to show unconscionability; a plaintiff must show that exceptional circumstances or economic hardships existed. *Contorno v. Wiline Networks, Inc.*, No. 07-5865, 2008 WL 1944825, *5 (D.N.J. May 1, 2008) (citing *Hemberger v. E*Trade Financial Corp.*, No. 07-1621, 2007 U.S. Dist. LEXIS 85702, *5 (D.N.J. November 19,

2007)). Here, there are no "exceptional circumstances" or "economic hardship" that could render the Arbitration Agreement unconscionable. The Agreement provides for a neutral arbitrator through the JAMS program, and specifically provides for adequate discovery and a written award. Exhibit 1 at ¶ 5; Exhibit A. The Agreement also expressly does not limit available remedies and requires Tesla to pay for the cost of arbitration "in excess of those which would be required if the dispute was filed in a court of law." *Id.* Further, Tesla has agreed to arbitrate in New Jersey, so any argument about the location of the arbitration is moot. *Contorno*, 2008 WL 1944825 at *6 (citing *Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10, 33 (1992)) (holding that if the Court finds infirmities in the Agreement, the offending provisions should be severed, allowing the remainder of the Agreement to stay intact and enforceable).

### D. Williams's Claims Should Be Compelled to Arbitration and His Case Dismissed or Stayed.

Because the parties entered into a valid contract requiring the submission of any disputes arising out of Williams's employment relationship with Tesla to be decided in arbitration, and this dispute falls within the scope of the Agreement, this Court must dismiss this action. *See Sues v. John Nuveen & Co.*, 146 F.3d 175, 188 (3d Cir. 1998) (affirming dismissal of claims and compelling arbitration); *Pelegrin v. United States Filter Corp.*, No. 97-390, 1998 U.S. Dist. LEXIS 5332, at *12 (D. Del. Mar. 31, 1998) (holding dismissal instead of stay is the correct disposition where all claims are arbitrable); *Wright v. Rent-A-Center East, Inc.*, No. 08-956, 2009 U.S. Dist. LEXIS 110882, at *9 (D. Del. Nov. 30, 2009) (granting dismissal where all claims were arbitrable); *Gonzalez v. Citigroup*, No. 09-017, 2009 U.S. Dist LEXIS 68208, *8 (D. Del. July 30, 2009) (same); *Smith v. Radwell Int'l, Inc.*, No. 06-cv-05682, 2007 U.S. Dist. LEXIS 45123, at **10-11 (D.N.J. June 20, 2007) (same); *Frederick v. Davitt*, No. 02-8263, 2003 U.S. Dist. LEXIS 1381, at *10 (E.D. Pa. Jan. 31, 2003) (same); *Reichner*, 2012 U.S. Dist. LEXIS

10

at *14 (same); *Rhodia Inc. v. Bayer Cropscience Inc.*, Civ. No. 04-6424, 2007 WL 3349453, *5 (D.N.J. Nov. 7, 2007) (same); *see also Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 108 Fed. App'x 35, 38 (3d Cir. 2004) (same).

In the event that the Court decides not to dismiss Williams's Complaint, Tesla respectfully requests that the Court stay this Action pending arbitration. Under the FAA, if a party brings an action "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court has no discretion to deny a stay if the plaintiff brings a lawsuit on an arbitrable claim. *See Lloyd v. Hovensa*, 369 F.3d 263, 269-70 (3d Cir. 2004). As demonstrated above, the parties entered into a valid, enforceable arbitration agreement, and Williams's claims are within the scope of the agreement. Accordingly, a stay is appropriate and this matter should be compelled to arbitration.

### IV.    CONCLUSION

For the foregoing reasons, Tesla respectfully requests that the Court compel Williams to arbitrate his claims against Tesla.

Respectfully submitted,

*/s/ Alexa J. Laborda Nelson*
Alexa J. Laborda Nelson
LITTLER MENDELSON, P.C.
Attorneys for Defendants Tesla, Inc.; Tesla Motor, Inc.; Tesla, Inc. d/b/a Tesla Motors, Inc.

Dated: April 13, 2018